**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| LEONARD R. NICHOLS, | : |
| Plaintiff, | : |
| v. | : CASE NO.: 1:13-CV-88 (WLS) |
| DOLLAR TREE STORES, INC., | : |
| Defendant. | : |

**ORDER**

Presently pending before the Court is the Parties' Joint Motion for Approval of Settlement and Dismissal With Prejudice ("Joint Motion"). (Doc. 24.) Therein, the Parties request that the Court enter an ender approving the Fair Labor Standards Act ("FLSA") settlement entered into by the Parties and dismiss this case with prejudice. For the reasons stated below, the Joint Motion for Approval of Settlement and Dismissal With Prejudice (Doc. 24) is **DENIED without prejudice consistent with this Order**.

**DISCUSSION**

**I.   In-Camera Inspection**

As a preliminary matter, the Court reviews its previous decision to allow the parties to email the settlement agreement to the Court for an in-camera inspection. In their Joint Motion, the Parties stated that:

> The Agreement contains strict confidentiality provisions, and settlement between the Parties would not be possible if the Agreement were not to remain confidential. Therefore, to allow the Court to approve settlement, while at the same time preserving the confidentiality agreement between the Parties, the Parties respectfully request that they be permitted to provide information via in camera review of the Agreement entered into between the Parties.

1

(Doc. 24 ¶ 9.)  In most cases when parties settle, the Court does not examine or approve their agreements; the settlements are purely private contracts.  In the typical FLSA case, however, a settlement agreement only available through in-camera inspection does not comport with the public's right of access to a judicial proceeding, which right is "an essential component of our system of justice [and] instrumental in securing the integrity of the process." *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.,* 263 F.3d 1304, 1311 (11th Cir. 2001).  The judge's "approving" a settlement constitutes a "public act," and the public "has an interest in knowing what terms of settlement a federal judge would approve." *Jessup v. Luther,* 277 F.3d 926, 929 (7th Cir. 2002).  As an active component of the judge's decision, the settlement agreement is presumptively a public record. *See Brown v. Advantage Eng'g, Inc.,* 960 F.2d 1013, 1016 (11th Cir. 1992) ("Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case."); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.,* 800 F.2d 339, 343 (3d Cir. 1986) ( "[T]he common law presumption of access applies to motions filed in court proceedings and to the settlement agreement ... filed and submitted to the district court for approval.")  The public enjoys the right both to attend a trial or hearing and to inspect and copy a judicial record.

The presumption that the record of a judicial proceeding remains public "is surely most strong when the 'right at issue is of a 'private-public character,' as the Supreme Court has described employee rights under the FLSA.'" *Stalnaker v. Novar Corp.,* 293 F. Supp. 2d 1260, 1264 (M.D. Ala. 2003) (quoting *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 708 (1945)).  "Sealing an FLSA settlement agreement between an employer and employee, reviewing the agreement *in camera,* or reviewing the agreement at a hearing without the agreement appearing in the record (and in any event precluding other employees' and the public's access to, and knowledge of, the

2

agreement) thwarts Congress's intent both to advance employees' awareness of their FLSA rights and to ensure pervasive implementation of the FLSA in the workplace." *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1245 (M.D. Fla. 2010). Furthermore, reviewing a FLSA settlement agreement *in camera* conflicts with the public's access to judicial records, frustrates appellate review of a judge's decision to approve (or reject) an FLSA compromise, contravenes congressional policy encouraging widespread compliance with the FLSA, and furthers no judicially cognizable interest of the parties. *See id.* at 1245 n.21 ("*In camera* examination equally frustrates appellate review of both a seal and a judge's approval of a settlement agreement because the district court reviews a settlement agreement in camera without articulating "specific findings" to justify a seal."); *Webb v. CVS Caremark Corp.*, No. 5:11-cv-106, 2011 WL 6743284, at *2 (M.D. Ga. Dec. 23, 2011) ("There is strong support that FLSA settlement agreements should never be sealed or reviewed in camera.") (citing *Dees*, 706 F. Supp. 2d at 1245); *but see Ammirati v. Luteran Servs. Fla., Inc.*, No. 2:09-cv-496, 2010 WL 148724, at *1 (M.D. Fla. Jan. 13, 2010) (approving FLSA settlement agreement reviewed via in-camera inspection); *Nunnink Wholesale Pictures & Mirrors, LLC*, No. 2:09-cv-365, 2010 WL 338098, at *2 (M.D. Fla. Jan. 22, 2010) (same). With these standards in mind, the Parties' assertion that an injustice will be caused if the proposed Agreement were placed in the public record is nowhere near sufficient to negate the preference for the right of public access. Accordingly, the Court **ORDERS** the parties to file, except upon articulated compelling grounds contemplated by the relevant laws, the proposed settlement agreement in the public docket. *See Stalnaker,* 293 F. Supp. 2d at 1262-64.

**II.     Motion to Approve Settlement Agreement**

This case was brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* In *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352–55 (11th Cir. 1982), the Eleventh Circuit explained that claims for compensation under the FLSA may only be settled or compromised when the Department of Labor supervises the payment of back wages or when the district court enters a stipulated judgment "after scrutinizing the settlement for fairness." *Id.* at 1353. Judicial review is required because the FLSA was meant to protect employees from substandard wages and oppressive working hours, and to prohibit the contracting away of their rights. *Id.* at 1352. Before approving a FLSA settlement, the court must review it to determine if it is "a fair and reasonable resolution of a bona fide dispute." *Id.* at 1354–55. If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354. Additionally, the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Silva v. Miller,* 307 F. App'x. 349, 351 (11th Cir. 2009) (per curiam).

    **A.     Damage Award**

The Parties have informed the Court that in "full settlement of known and unknown claims," Dollar Tree will pay to Plaintiff a total sum of $528.10. The Parties have not, however, made a "full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims." *Dees*, 706 F. Supp. 2d at 1243. The Court cannot determine whether Plaintiff's claims are being paid in full or if Plaintiff has

4

compromised the amounts of his claim. It is unclear how the Court can determine what is "fair and reasonable" without knowing these germane details. Moreover, under the FLSA a plaintiff is entitled to recover unpaid wages plus an equal amount of liquidated damages. 28 U.S.C. § 216(b). The parties do not state whether Plaintiff is receiving liquidated damages, or if he is not, the reasons why. Without clarification on all the above grounds, the Court cannot approve the proposed settlement agreement.

### B. Waiver Provisions

The Court also finds that it cannot approve the proposed settlement agreement based on the "pervasive release" contained therein. Subsection 3(b)(ii) of the Agreement states that Plaintiff agrees to release all claims he has or had against the Release Parties, including but not limited to:

> (A) those which in any way relate to [Plaintiff's] employment with [Defendant]; and (B) any other claims or demands [Plaintiff] may have on any basis, including but not limited to common law or tort, or other claims that may have arisen under any of the anti-discrimination statutes or laws, the Worker Adjustment & Retraining Notification Act ("WARN Act"), Title VII of the Civil Rights Act of 1964, Sections 1981 and 1983 of the Civil Rights Act of 1866, the Civil Rights Act of 1871, § 503 and § 504 of the Rehabilitation Act of 1973, the Genetic Information Nondiscrimination Act of 2008, the Family and Medical Leave Act ("FMLA"), the Fair Labor Standards Act ("FLSA"), the Equal Pay Act ("EPA"), the Americans With Disabilities Act ("ADA"), the Employment Retirement Income Security Act of 1974 ("ERISA"), and any similar domestic or foreign laws, such as the Virginians with Disabilities Act, the Virginia Human Rights, the Georgia Fair Employment Practices Act, and the Georgia Equal Pay Act.

This kind of provision is called a "pervasive" release, and the Court finds its inclusion problematic as applied to this case. As one district court noted, while this kind of "reciprocal, general release is incontestably a staple of accepted and common litigation practice[, . . .] a[] FLSA action is different." *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1348 (M.D. Fla. 2010). Per the *Moreno* Court, "[a] pervasive release in

5

an FLSA settlement introduces a troubling imponderable into the calculus of fairness and full compensation." This Court could not agree more.

Here, the Parties would have the Court approve a settlement that allows Plaintiff to waive any claim he may presently have that may not become known to him until years later for $500.00. If the Court were to accept the currently proposed Agreement, Plaintiff would essentially be giving up unknown rights in exchange for nothing from Defendant beyond the FLSA claim. This the Court cannot do. As the Court in *Moreno* explained:

> An employee who executes a broad release effectively gambles, exchanging unknown rights for a few hundred or a few thousand dollars to which he is otherwise unconditionally entitled. In effect, the employer requests a pervasive release in order to transfer to the employee the risk of extinguishing an unknown claim. In the language of *Hydradry*, a pervasive release is a "side deal" in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee. (If an employee signs a pervasive release as part of a "side deal" and later discovers a valuable but released claim, the employee perhaps looks for compensation from the attorney who advise [sic] the employee to grant the release.) Although inconsequential in the typical civil case (for which settlement requires no judicial review), an employer is not entitled to use an FLSA claim (a matter arising from the employer's failing to comply with the FLSA) to leverage a release from liability unconnected to the FLSA.

729 F. Supp. 2d at 1351 (footnote omitted). Therefore, in the absence of any other information shedding light on the relative equities of the proposed release, *see id.* at 1352 ("Absent some knowledge of the value of the released claims, the fairness of the compromise remains indeterminate."), the Court finds it to be inherently unfair. Accordingly, the Court cannot approve the proposed Agreement with the inclusion of the pervasive release.[1]

---

[1] The Court's finding of fairness as to the pervasive release also encompasses subsections 3(c)-(d).

### C. "No Disparagement," "No Facilitation," and Confidentiality Provisions

The Court also concludes that the "No Disparagement" provision in subsection 4(b) is not fit for the Court's approval. Courts have struck such provisions in FLSA settlement agreements, finding them to constitute a "judicially imposed 'prior restraint' in violation of the First Amendment." *Valdez v. T.A.S.O. Properties, Inc.*, No. 8:09-cv-2250, 2010 WL 1730700, at *1 n.1 (M.D. Fla. Apr. 28, 2010) (citing federal case law regarding First Amendment concerns in the context of permanent injunctions in defamation actions); *DeGraff v. SMA Behavioral Health Servs., Inc.*, No. 3:12-cv-733, 2013 WL 2177984, at *4 (M.D. Fla. Mar. 5, 2013); *Housen v. Econosweep & Maintenance Servs., Inc.*, No. 3:12-cv-461, 2013 WL 2455958, at *2 (M.D. Fla. June 6, 2013). Specifically here, the Court finds the proposed disparagement provision to be particularly problematic in that it does not limit the restraints on Plaintiff's free speech to only those statements concerning his FLSA claim. Therefore, the Court finds that this provision should be stricken.

In subsection 4(d), entitled "Promise Not to Facilitate Claims Against Dollar Tree," the Agreement states that "[Plaintiff] promises not to voluntarily encourage, counsel or assist (directly or indirectly) any current or former employee or third party (excluding government law enforcement agencies) in the preparation or prosecution of any civil dispute, difference, grievance, claim, charge or complaint against Dollar Tree . . . unless [Plaintiff] is compelled to do so by valid legal process." The Court finds that this provision would similarly impose a prior restraint on Plaintiff's free speech rights (the right to engage with third parties for the purpose of facilitating claims against Dollar Tree), as well as also interfere with another constitutionally protected right— freedom of association. Because the Court has already made clear that it will not impose

7

any "judicially imposed 'prior restraint[s]'" on Plaintiff's speech, the Court will move on to the free-association part of its analysis.

In *Roberts v. United States Jaycees*, 468 U.S. 609, 617-18 (1984), the Supreme Court concluded that freedom of association is divided into two categories: 1) intimate association and 2) expression association.  Intimate association protects "choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty." *Id.*  Expressive association protects the "right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties." *Id.* at 618.

As the restraint in question refers to Plaintiff's right to associate with third parties for the purpose of "counsel[ing] or assist[ing] . . . in the preparation or prosecution of any civil dispute, difference, grievance, claim, charge or complaint against Dollar Tree," the Court finds expressive association to be the right implicated in this case.  "[C]ourts have 'long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends.'"  *Beta Upsilon Chi v. Machen*, 559 F. Supp. 2d 1274, 1278 (N.D. Fla. May 29, 2008) (quoting *Roberts*, 468 U.S. at 618), *vacated and remanded on other grounds by* 586 F.3d 908 (11th Cir. 2009).  The Court finds Plaintiff's right to associate with others to possibly pursue grievances against Dollar Tree to fall within the ambit of this

8

right. If the Court cannot impose a prior restraint on Plaintiff's ability to speak disparagingly about Dollar Tree, it follows that the Court may not impose a prior restraint on Plaintiff's right to assist a third party in some collective undertaking that may still have the effect of disparaging Dollar Tree. Simply put, if Plaintiff wants to start a "he-man Dollar Tree haters club" whose only mission is to pursue redress against Dollar Tree, this Court cannot sanction Dollar Tree's attempt to bargain for the right to preemptively stand in the way of such an endeavor.[2]

Also within the "Promise Not to Facilitate Claims" provision, the Court further finds the requirement that Plaintiff obtain Dollar Tree's permission before providing any testimony "in *any context* about Dollar Tree" to *any third party* to be no less problematic. "[T]he right to appear and give true testimony as a witness in a legal proceeding is guaranteed by the first amendment's free speech clause." *Green v. City of Montgomery*, 792 F. Supp. 1238, 1253 (M.D. Ala. 1992); *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982), *cert. denied*, 502 U.S. 906 (1991); *Melton v. City of Oklahoma City*, 879 F.2d 706, 714 (10th Cir. 1989); *Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1100-01 (5th Cir. 1987). Therefore, the Court cannot approve any bargain, in the context of the sensitive nature of FLSA settlements, that abridges this right, especially an abridgement without limitation like the one suggested here.[3]

Finally, as to the confidentiality provision in the Agreement, because the Court has already ordered that the Settlement Agreement shall be filed on the public docket,

---

[2] The Agreement states that the "Promise Not to Facilitate Claims" is necessary to protect Dollar Tree's "many legitimate protectable interests, including but not limited to confidential proprietary, business process and personal information." The Court, however, concludes that if Dollar Tree has any right to pursue redress for any damage to proprietary information, such right would not emanate from this settlement agreement entered into under the Fair Labor Standards Act. This right would, in fact, arise out of contract, e.g., a nondisclosure agreement entered into by the Parties. Dollar Tree cannot now seek to protect their proprietary information via a settlement agreement for $500 in wages under FLSA.

[3] The Court's finding is not intended to interfere with any rights under tort law that Dollar Tree may have to the extent Plaintiff engages in any actionable conduct with third parties. The Court is merely concluding that Dollar Tree may not use the instant FLSA settlement agreement to create any substantive rights.

9

the confidentiality provision in subsection 4(c) is stricken as well as it is unenforceable and unnecessary. *Webb*, 2011 WL 6743284, at *3 (noting that "in light of the Court's ruling that it will not seal any settlement agreements, it is likely the confidentiality provisions are unenforceable" and, moreover, that "a confidentiality provision in a FLSA settlement agreement both contravenes the legislative purpose of the FLSA and undermines the Department of Labor's regulatory effort to notify employees of their FLSA rights"); *Housen*, 2013 WL 2455958, at *2 (citing *Webb* and striking confidentiality provision as unenforceable).

### D. "No Future Employment" Provision

The Agreement also contains a provision that states that Plaintiff "promises never to seek employment with Dollar Tree in the future (including but not limited to employment as an employee or engagement as a temporary employee, seasonal employee, or contractor)." As an initial matter, the Court is quite confounded as to why any individual would ever agree to be so bound in this world of uncertainty and finite job opportunities. Nevertheless, the Court recognizes that other courts have approved similar waivers of future employment in FLSA settlement agreements in cases where the employee warranted to the Court that s/he has no desire to ever seek re-employment with the employer. *See, e.g., Robertson v. Ther-Rx*, No. 2:09-cv-1010, 2011 WL 1810193, at *2 (M.D. Ala. May 12, 2011); *Cruz v. Winter Garden Realty, LLC*, No. 6:12-cv-109, 2013 WL 4774617, at *3 (M.D. Ala. Sept. 4, 2013). Here, however, not only does the Court not have any information about Plaintiff's desire (or lack thereof) to pursue future employment with Dollar Tree, but the Court believes that the relevant inquiry should be the impact of the future-employment waiver, not the mutual assent to the provision.

In reaching this conclusion, the Court finds *Robertson* to be instructive. In *Robertson*, the court's approval of the future-employment waiver appeared to be predicated on the impact of the waiver. Per the court, because of the "precarious financial viability" of Ther-Rx Corp—a fact that made "future employment . . . far from assured for anyone"—the "impact of th[e waiver of future employment] requirement [wa]s inconsequential." On the contrary, the court in *Cruz v. Winter Garden Realty, LLC*, No. 6:12-cv-109, 2013 WL 4774617, at *3 (M.D. Ala. Sept. 4, 2013), did not discuss the "impact" of the waiver. In this Court's view, however, a future-employment waiver for a local realty company does not engender anywhere near the same kind of concerns that a waiver for a retail business of the stature of Dollar Tree does. Dollar Tree is a Fortune 500 company that operates 4,763 stores throughout the United States and Canada, making it the nation's largest single price point retailer.[4] There appear to be over 70 Dollar Tree locations in Georgia alone. Based on these numbers, the impact of the instant future-employment waiver on Plaintiff would be far from "inconsequential."

Furthermore, the instant future-employment waiver, without more, can also be viewed as punishment for the exercise of a legal right under the FLSA, which would be inconsistent with the purpose of the statute. No matter how "voluntary" Plaintiff's submission to this provision may be, the Court believes that the inclusion of overly broad provisions like this in FLSA settlement agreements have implications that reach far beyond the parties involved. Because this agreement will become part of the public record, other employees seeking to vindicate rights under FLSA may feel deterred from doing so for fear that employers might seek to exact from them a promise to never again apply for future employment. *See Dees*, 706 F. Supp. 2d at 1247 ("An employee's right to a minimum wage and overtime is unconditional, and the district court should

---

[4] Dollar Tree, http://www.dollartree.com (last visited November 1, 2013).

11

countenance the creation of no condition, whether confidentiality or any other construct, that offends the purpose of the FLSA.")  Dollar Tree is welcome to hire whom it chooses, as employers are permitted to do within the bounds of the law.  In this Court's view, however, expansive provisions like the instant future employment waiver are unconscionable when placed in a FLSA agreement—a characterization that is not negated by the agreement of the parties.  Accordingly, this provision, as presented, is stricken as well.

## **CONCLUSION**

In light of the foregoing, the Court **DENIES** without prejudice, consistent with this order, the Joint Motion for Approval of Settlement and Dismissal With Prejudice (Doc. 24).  Within twenty-one (21) days of the date of this order, the parties may move for this Court's approval of an amended proposed settlement agreement in accordance with this order and file the proposed amended settlement agreement on the record or articulate a legal and factual basis for sealing in view of the discussion at Part I.

**SO ORDERED**, this   1st   day of November, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,
UNITED STATES DISTRICT COURT**